UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| YUSHA TRUELOVE, | Case No. 26-cv-01136-LB |
| Plaintiff, | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| v. | Re: ECF No. 11 |
| NORDSTROM, INC., | |
| Defendant. | |

**INTRODUCTION**

The plaintiff in this putative class action case, who worked in the customer service department for Nordstrom, Inc., brings nine claims against Nordstrom under the California Labor Code and one claim for unfair competition under the California Business & Professions Code. Nordstrom moved to compel arbitration under the dispute-resolution agreements (DRAs) that existed during the plaintiff's employment. The parties dispute whether (1) Nordstrom has shown that the plaintiff signed the onboarding 2021 DRA, (2) the plaintiff's agreeing to the DRA was induced by fraud, and (3) the DRAs delegate issues of arbitrability to an arbitrator.

Nordstrom has shown that the DRAs are valid and that the plaintiff agreed to them, and the parties delegated issues of arbitrability to the arbitrator. The court compels arbitration.

ORDER – No. 26-cv-01136-LB

**STATEMENT**

The plaintiff was born and raised in Myanmar. His first language is Burmese and his second Hindi. When the plaintiff moved to California in 2018, he knew beginner-level English and could communicate about basic personal needs and ideas to participate in conversations. In June 2021, the plaintiff applied to work for Nordstrom (a nationwide specialty fashion retailer based in Seattle, Washington) in Corte Madera, stating in his resume that he received his entire education in Myanmar, including high school and his bachelor's degree. The plaintiff also submitted his green card to complete the Form I-9 Employment Eligibility Verification.[1]

The plaintiff worked at Nordstrom from June 2021 until October 2024.[2] From June 2021 to August 2022, the plaintiff worked in the customer-service department and struggled to understand or communicate with English-speaking customers and would transfer those customers to employees who spoke English more proficiently. In August 2022, the plaintiff became a salesperson. His supervisor witnessed the plaintiff speak Hindi with two other Hindi-speaking coworkers and knew that the plaintiff had a language barrier because he "sought her help on multiple occasions" with communicating or understanding English-speaking customers.[3] The plaintiff is better at speaking English than reading or writing it.[4]

Nordstrom submitted affidavits contrasting the plaintiff's description of his English proficiency, stating that he spoke fluent English with customers and co-workers throughout his time at Nordstrom, never told his supervisor that he had difficulty reading or understanding English, and was never observed having any difficulty communicating in English.[5]

Nordstrom utilized multiple Dispute Resolution Agreements (DRAs) during the plaintiff's employment. Before completing his application for employment through Nordstrom's careers

---

[1] Truelove Decl. – ECF No. 12-2 at 2 (¶¶ 2–7); Fischbeck Decl. – ECF No. 11-1 at 2 (¶ 3). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1-1 at 7 (¶ 18).

[3] Truelove Decl. – ECF No. 12-2 at 2–4 (¶¶ 8–14, 20).

[4] *Id.* at 4 (¶ 21).

[5] Brown-Costan Decl. – ECF No. 11-2 at 2 (¶¶ 2–4).

ORDER – No. 26-cv-01136-LB                    2

website, the plaintiff was presented with a screen that prompted him to access and review the link to the effective DRA and "agree that [he has] carefully read, underst[oo]d, and agree[d] to the Dispute Resolution Agreement."[6] He was required to check a box confirming that he had read and consented to the terms and conditions and click "Save and Continue" to move past this screen.[7] Nordstrom's records state that the plaintiff submitted his application on June 19, 2021.[8]

On June 21, 2021, Nordstrom sent the plaintiff an offer letter, which included the onboarding 2021 DRA. The offer letter stated that it was "contingent upon [his] agreement to and signature on Nordstrom's Dispute Resolution Agreement" and that his start date would be July 2, 2021.[9] To review and accept the Offer Letter and Onboarding 2021 DRA, the plaintiff would have needed to log into Nordstrom's careers website using his unique username and password. The plaintiff had the ability to print the offer letter and onboarding 2021 DRA to review them offline. Nordstrom's records show that the plaintiff electronically signed the onboarding 2021 DRA on June 21, 2021.[10]

The onboarding 2021 DRA states that it applies to all disputes arising from the plaintiff's employment with Nordstrom, "all other state statutory or common law claims," and "to the resolution of past, present and future disputes that otherwise would be resolved in a court of law and requires that all such disputes be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in [the Onboarding 2021 DRA]."[11] The onboarding 2021 DRA also requires that disputes be brought on an individual basis in arbitration and states that it "does not apply to disputes regarding the enforceability,

---

[6] Fischbeck Decl. – ECF No. 11-1 at 4 (¶ 11); Screenshot, Ex. A to *id.* – ECF No. 11-1 at 14).

[7] Fischbeck Decl. – ECF No. 11-1 at 4 (¶ 11).

[8] Fischbeck Decl. – ECF No. 11-1 at 4 (¶ 11); Pl.'s Appl. Confirmation, Ex. B to *id.* – ECF No. 11-1 at 16–18).

[9] Fischbeck Decl. – ECF No. 11-1 at 4 (¶ 12); Offer Letter, Ex. D to *id.* – ECF No. 11-1 at 26–32.

[10] Fischbeck Decl. – ECF No. 11-1 at 4 (¶ 13); Onboarding 2021 DRA, Ex. C to *id.* – ECF No. 11-1 at 20–25. The plaintiff's name when he signed the documents was Nay Lin, which he later changed to Yusha Truelove. Fischbeck Decl. – ECF No. 11-1 at 3 (¶ 7).

[11] Onboarding 2021 DRA, Ex. C to Fischbeck Decl. – ECF No. 11-1 at 21).

United States District Court
Northern District of California

revocability or validity of the Agreement or any portion of the Agreement. Such disputes can be resolved only by a court of competent jurisdiction."[12]

Nordstrom released updated DRAs in 2021, 2022, and 2024. Each version states,

> Except as provided otherwise, this Agreement applies mutually to any legal disputes arising out of or related to your application for employment with Nordstrom, your employment with Nordstrom, or the termination of your employment with Nordstrom ("Covered Disputes"). This Agreement applies to any Covered Disputes that Nordstrom may have against you or you may have against [Nordstrom]. . . . This Agreement is intended to apply to the resolution of past, present, and future Covered Disputes that otherwise would be resolved in a court of law and requires that all Covered Disputes be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial, except as otherwise stated in this Agreement. This means that neither party has the right to litigate Covered Disputes in court or to have a jury trial.[13]

Each updated DRA contains a class-action waiver and states that "Covered Disputes" include claims for unfair compensation, meal and rest breaks, minimum wage, overtime, expense reimbursement, "other state and local statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims."[14] Each updated DRA includes a delegation clause stating that "disputes relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable, are Covered Disputes and shall be decided by the arbitrator."[15]

Nordstrom notified the plaintiff of the updated DRAs by sending him emails informing him of the updates, which included links to the 2021, 2022, and 2024 DRAs, and posting the updated DRAs to Nordstrom's intranet site.[16] The updated DRAs each state that employees agree to the

---

[12] Onboarding 2021 DRA, Ex. C to Fischbeck Decl. – ECF No. 11-1 at 21–22.

[13] 2021, 2022, & 2024 DRAs, Exs. H, J, L to Fischbeck Decl. – ECF No. 11-1 at 86, 107, 128.

[14] 2021, 2022, & 2024 DRAs, Exs. H, J, L to Fischbeck Decl. – ECF No. 11-1 at 86, 99, 107, 122–23, 128, 130–31).

[15] 2021, 2022, & 2024 DRA, Exs. H, J, L to Fischbeck Decl. – ECF No. 11-1 at 86, 107–08, 128.

[16] Fischbeck Decl. – ECF No. 11-1 at 6 (¶¶ 21–23, 28–30, 35–38); Emails, Exs. I, K, M to Fischbeck Decl. – ECF No. 11-1 at 93–103, 115–24, 134–43.

ORDER – No. 26-cv-01136-LB                4

DRA by continuing their employment for five days after receiving the agreement.[17] The plaintiff continued working for Nordstrom longer than five days after the release of each updated DRA.[18]

## ANALYSIS

The parties dispute whether (1) Nordstrom has proved the existence of a contract by authenticating the plaintiff's electronic signature, (2) Nordstrom induced the plaintiff's signature through fraud, and (3) the parties delegated issues of enforceability to the arbitrator. Nordstrom has shown that the plaintiff signed the onboarding DRA, the contract is valid, and the parties delegated issues of enforceability to the arbitrator. The court compels arbitration.

### 1.  Authentication of the Plaintiff's Signature

The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). Under California law, "[t]he terms of an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 68 Cal. App. 4th 83, 89 (1998) (cleaned up). This precept applies to arbitration provisions within contracts. *See id.*

The plaintiff asserts that Nordstrom has failed to meet its burden of proving the existence of a valid arbitration agreement signed by the plaintiff because (1) the supporting declaration assumes that the plaintiff underwent the effective protocols at that time without stating that he actually signed the agreement and (2) Nordstrom has refused to provide audit trails of the electronic signature.[19] Nordstrom counters that its supporting declaration provides express testimony and evidence that the plaintiff agreed to the 2021 onboarding DRA.

---

[17] 2021, 2022, & 2024 DRAs, Exs. H, J, L to Fischbeck Decl. – ECF No. 11-1 at 91, 113, 132.

[18] Fischbeck Decl. – ECF No. 11-1 at 7 (¶ 25), 9–11 (¶¶ 32, 40).

[19] Opp'n – ECF No. 12 at 10–11.

United States District Court
Northern District of California

Nordstrom has met its burden of establishing the existence of the arbitration agreement. The Fischbeck declaration explains the steps required for its records to indicate that the plaintiff signed the onboarding DRA, including that it required using unique login criteria, checking a box confirming that the plaintiff read, understood, and accepted the terms of the agreement, and clicking save and continue.[20] While the plaintiff cites *Jones v. Solgen Construction* for the point that an audit trail is a reliable way to certify an e-signature, he cites no authority requiring an audit trail to authenticate a signature.[21] 99 Cal. App. 5th 1178, 1190 (2024). Nordstrom's declaration and documentary evidence sufficiently establish that the plaintiff signed the 2021 onboarding DRA. *Cf. Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 843–44 (no authentication where the defendant did not explain how it knew the electronic signature was made by the plaintiff). Even if he had not, the plaintiff does not dispute the validity of the 2021, 2022, or 2024 updated DRAs.[22]

## 2. Fraud in the Execution

The plaintiff asserts that he has established fraud in the execution (rendering the DRA void) because (1) Nordstrom knew the plaintiff had limited understanding of English, which deprived him of the opportunity to learn the terms of the document, and (2) the plaintiff was pressured by being required to agree to the DRAs to keep his job.[23] Nordstrom responds that the plaintiff has not established fraud in the execution because (1) he has not alleged any fraudulent acts by Nordstrom, (2) generally, a party may not avoid a contract due to limited proficiency with English, and (3) the plaintiff had a reasonable opportunity to understand the DRAs.[24]

California law provides that if there is fraud in the execution of an agreement such that "the promisor is deceived as to the nature of his act," then "mutual assent is lacking" and the contract is

---

[20] Fischbeck Decl. – ECF No. 11-1 at 4–5 (¶¶ 11–13).

[21] Opp'n – ECF No. 12 at 10.

[22] Reply – ECF No. 13 at 8 n.2.

[23] Opp'n – ECF No. 12 at 12.

[24] Reply – ECF No. 13 at 6.

void. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996). To succeed on this theory, a plaintiff must show: (1) misrepresentation (including by omission) and (2) reasonable reliance on that misrepresentation. *Id.* at 419–20.

The plaintiff has not established fraud in the execution. He alleges no misrepresentation by Nordstrom.[25] To the extent that Nordstrom was on notice of the plaintiff's limited proficiency with English, the plaintiff had eleven days to review the contract.[26] In the absence of fraud, the arbitration agreement is valid. *Caballero v. Premier Care Simi Valley LLC*, 69 Cal. App. 5th 512, 518–19 (2021).

### 3. Delegation Clause and Unconscionability

Under the Federal Arbitration Act (FAA), "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 67 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Further, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 69 (cleaned up); *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 654 (2022) ("[I]t is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability."). "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein*, 586 U.S. at 69 (citing 9 U.S.C. § 2). "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

If the parties agreed to delegate questions of arbitrability to the arbitrator, then the only question for a court "is whether the particular agreement *to delegate* arbitrability . . . is itself unconscionable."

---

[25] *Id.* at 7 (making this point).

[26] Fischbeck Decl. – ECF No. 11-1 at 4 (¶ 11–12).

*Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (citing *Rent-A-Ctr.*, 561 U.S. at 63). Arguments that the arbitration provisions as a whole are unconscionable or otherwise unenforceable are for the arbitrator, not the court, to decide. *Cf. id.* at 1133 ("[S]ince [plaintiff] failed to 'make any arguments specific to the delegation provision' and instead argue[s] 'that the Arbitration Clause as a whole is unconscionable under state law,' 'we need not consider that claim,' because it is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question, as we held above." (cleaned up) (quoting *Rent-a-Ctr.*, 561 U.S. at 73–75)).

The DRAs have the delegation provision set forth in the Statement. The clause provides that arbitration is the mechanism to resolve all disputes, including the enforceability of the agreement. The plaintiff does not dispute the validity of the delegation clauses but points to language in the DRA updates stating that class, collection, or representative-action waivers may be determined by a court as support that all issues of enforceability may be decided by a court.[27] That conclusion is unpersuasive where the updated DRAs contain explicit language delegating issues of enforceability to the arbitrator and the plaintiff does not dispute the validity of those terms.[28]

This should end the inquiry: the plaintiffs do not "challenge[] the delegation clause specifically," and thus the court must "enforce it . . . , leaving any challenge to the validity of the Agreement as a whole for the Arbitrator." *Rent-a-Ctr.*, 561 U.S. at 72; *see Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1110 (2018) (the plaintiff's unconscionability challenge to the delegation clause is for the court to decide even if he makes the same challenge to the whole arbitration provision).

The plaintiff's unconscionability arguments would not change this outcome.

The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assoc., Inc. v. Casarotto*, 517

---

[27] Opp'n – ECF No. 12 at 9.

[28] Reply – ECF No. 13 at 9.

United States District Court
Northern District of California

U.S. 681, 687 (1996). "Under California law, 'the party opposing arbitration bears the burden of proving any defense, such as unconscionability.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

In California, contractual unconscionability has procedural and substantive components. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "[T]he former focus[es] on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Id.* (cleaned up). "Procedural and substantive unconscionability 'need not be present in the same degree.'" *Poublon*, 846 F.3d at 1260 (citing *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)). "Rather, there is a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 114).

The plaintiff contends that the DRAs are procedurally unconscionable because they are contracts of adhesion and were not provided to the plaintiff in his primary language, citing *Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205, 216–17 (2016).[29] Nordstrom responds that adhesion alone indicates only a low degree of procedural unconscionability and that *Penilla* is distinguishable from this case.[30]

Procedural unconscionability focuses on the circumstances surrounding the negotiation of the contract. *Gatton v. T–Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008) (cleaned up). "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (cleaned up).

The DRAs have minimal procedural unconscionability. First, "adhesion alone generally indicates only a low degree of procedural unconscionability." *Ramirez v. Charter Commc'ns, Inc.*,

---

[29] Opp'n – ECF No. 12 at 14–17.

[30] Reply – ECF No. 13 at 10–11.

United States District Court
Northern District of California

16 Cal. 5th 478, 494 (2024). Second, *Penilla* is distinguishable. The plaintiffs in *Penilla* were mobile-home owners challenging the validity of rental agreements for the land their mobile homes occupied. *Penilla*, 3 Cal. App. 5th at 210. In finding the arbitration agreement unconscionable, the court in *Penilla* relied on the plaintiffs' having insufficient time to review the agreement, the agreement was "confusing and sometimes contradictory," and the "economic imbalance of power in favor of" the park owners created by the immobility of a mobile home, an owner's investment, and restrictions on mobile home spaces. *Id.* at 214–15. Here, the plaintiff did not lack sufficient time to review the DRAs and does not argue that they were confusingly drafted. While the plaintiff asserts that he was under "high pressure" to agree to the DRAs, he has not pleaded facts putting him in the same shoes as the mobile-home owners in *Penilla*.[31] Thus, there was only a minimal amount of procedural unconscionability in the DRAs.

Turning to substantive unconscionability, the plaintiff asserts that the DRAs are substantively unconscionable because they are one-sided (covering claims primarily brought by employees) and survive even after termination of employment.[32] Nordstrom counters that the DRAs are fully mutual and that an agreement's surviving an employee's termination is not unconscionable when the agreement is limited to claims arising from employment.[33]

The DRAs contain minimal substantive unconscionability at most. The plaintiff's concerns about mutuality are mitigated by the DRAs' stating that they apply "mutually to any legal disputes arising out of or related to your application for employment with Nordstrom, your employment with Nordstrom, or the termination of your employment with Nordstrom."[34] The plaintiff cites *Cook v. University of Southern California* to argue that agreements of infinite duration are unconscionable, but the case is distinguishable. 102 Cal. App. 5th 312 (2024). In *Cook*, the arbitration agreement applied generally to all claims by the employee against the employer

---

[31] Opp'n – ECF No. 12 at 12.

[32] Opp'n – ECF No. 12 at 17–18.

[33] Reply – ECF No. 13 at 11–13.

[34] 2021, 2022, & 2024 DRAs, Exs. H, J, L to Fischbeck Decl. – ECF No. 11-1 at 86, 107, 128.

ORDER – No. 26-cv-01136-LB                    10

United States District Court
Northern District of California

regardless of the claim arose after employment had ended. *Id.* at 317. Conversely, the DRAs' coverage is limited to issues relating to the plaintiff's employment.[35]

In sum, the DRAs contain minimal levels of procedural and substantial unconscionability and, therefore, are not unconscionable.

## CONCLUSION

The court compels arbitration and stays the case pending arbitration. *Smith v. Spizziri*, 601 U.S. 472, 474, 476–78 (2024) (per curiam) (requiring stay). This resolves ECF No. 11.

**IT IS SO ORDERED.**

Dated: May 14, 2026

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[35] Reply – ECF No. 13 at 12–13.

ORDER – No. 26-cv-01136-LB                    11